UNITED STATES DISTRICT COURT

FOR THE DISTRICT O F ARIZONA

*QOTD Film Investment, Ltd. v John and Jane Doe 1-26*

Case No.  2:16-cv-01021-NVW

**MOTION FOR LEAVE TO TAKE DISCOVERY
PRIOR TO RULE 26(f) CONFERENCE**

**Exhibit 1:** *PTG Nevada, LLC v Doe et al.* Order (Dkt. #9)

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9
10
11
12
13
14
15

| | |
|---|---|
| PTG Nevada, LLC, a Nevada Limited Liability Company, | Case No. CV-16-00304-PHX-MHB |
| Plaintiff, | **ORDER** |
| v. | |
| John and Jane Doe 1-16, | |
| Defendants. | |

16
17
18
19

    Pending before this Court is Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (Doc. 6). Plaintiff requests Court permission to serve limited discovery prior to a Rule 26(f) conference on non-party Internet Service Providers (ISPs) solely to determine the true identities of the 16 Doe Defendants.

20
21
22
23
24
25
26
27
28

    "As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (*citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9thCir. 1980)). These requests are allowed upon a showing of good cause. *See Dell Inc. v. BelgiumDomains, LLC*, No. Civ. 07-22674, 2007 WL 6862341, *6 (S.D. Fla. 2007); *see also Ayyash v. BankAl-Madina*, 233 F.R.D. 325, 327 (S.D.NY. 2005) (granting ex parte expedited discovery from third parties where plaintiff showed

good cause); *Semitool, Inc. v. Tokyo Electronic America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying a good cause standard to plaintiff's request for expedited discovery).

Within the internet context, Courts have recognized "[s]ervice of process can pose a special dilemma for plaintiffs in cases…[where] the tortious activity occurred entirely online." *Columbia Ins.*, 185 F.R.D. at 577. The Court applies a three-factor test for considering motions requesting early discovery to assist in the identification of certain defendants. *Id.* at 578-80.

First, the moving party should be able to identify "the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court." *Id.* at 578 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Plaintiff has identified the missing parties with as much clarity as possible by determining their Internet Protocol (IP) addresses. Plaintiff has stated that these missing parties are persons or entities, and that these person/entities have been observed and documented as infringing on its copyrights. (Doc. 6-1, Declaration of Daniel Macek.) Thus, as real persons/entities, these Does can be sued in federal court.

Second, the moving party should be able to identify "all previous steps taken to locate the elusive defendant." *Id.* at 579. The only information Plaintiff has regarding Defendants is their IP addresses. There are no other reasonable measures Plaintiff could take to identify Defendants other than to obtain this identifying information from the ISPs. Consequently, Plaintiff must serve subpoenas on the listed ISPs to obtain the information it seeks.

Third, the moving party should be able to "establish to the Court's satisfaction that [its] suit against defendant could withstand a motion to dismiss." *Id.* at 578 (citing *Gillespie*, 629 F.2d at 642). Plaintiff has alleged a *prima facie* claim of copyright infringement. Specifically, Plaintiff claims: (1) it owns and has registered the

copyrighted work at issue in this case; (2) Defendants reproduced and distributed those works without authorization; and (3) Plaintiff was damaged by Defendants' actions. Plaintiff has also alleged a *prima facie* case of contributory copyright infringement. (Doc. 1.) Plaintiff claims: (1) it owns and has registered the copyrighted work at issue in this case; (2) Defendants knew of the infringing activity and were conscious of their infringement; and (3) Defendants actively participated in this infringement by inducing, causing and contributing to the infringement of Plaintiff's copyright work. (*Id.*) Accordingly, Plaintiff's Complaint could withstand a motion to dismiss.

Therefore, Plaintiff has satisfied the three-factor rest for the claims raised in the Complaint. Furthermore, the scope of this order is tailored to achieve the reasonable and necessary purpose of identifying already known alleged offenders. The Court finds good cause to grant Plaintiff the relief it seeks. This good cause is limited to the requested first round of discovery. The Court is unwilling to grant pre-authorization for additional discovery at this time.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (Doc. 6), is **GRANTED** as follows:

1. Plaintiff may immediately serve subpoenas pursuant to Fed. R. Civ. P. 45 upon the ISPs Plaintiff identifies that can provide the true name and address of each of the 16 Doe Defendant that Plaintiff has identified in Exhibit A of its Complaint. (Doc. 1-1 at 2.)

3. Any ISP so served shall have seven (7) calendar days after service of any subpoenas to notify subscriber(s) that their indetit(y/ies) have been subpoenaed by Plaintiff. Each subscriber whose identity has been subpoenaed shall have twenty-one (21) calendar days from the date of such notice to file a responsible pleading or motion to quash.

\\\
\\\
\\\

5. Any information disclosed to Plaintiff in response to any subpoena issued pursuant to this order may not be used for any improper purpose and may only be used for protecting this right under the Copyright Act, 17 U.S.C. § 101, *et seq.*, as the Complaint alleges.

Dated this 11th day of March, 2016.

_Michelle H. Burns_

Michelle H. Burns
United States Magistrate Judge

UNITED STATES DISTRICT COURT

FOR THE DISTRICT O F ARIZONA

*QOTD Film Investment, Ltd. v John and Jane Doe 1-26*

Case No.  2:16-cv-01021-NVW

## MOTION FOR LEAVE TO TAKE DISCOVERY
## PRIOR TO RULE 26(f) CONFERENCE

**Exhibit2:** Declaration of D. Macek

Geoffrey S. Kercsmar (#020528)
Gregory B. Collins (#023154)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001
(480) 421-1002 fax
gsk@kflawaz.com
gbc@kflawaz.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| QOTD Film Investment, Ltd., a business organization organized in the United Kingdom,<br><br>    Plaintiff,<br><br>v.<br><br>John and Jane Doe 1-26,<br><br>    Defendants. | Case No. 2:16-cv-01021-NVW<br><br><br>**DECLARATION OF DANIEL MACEK** |

1.      My name is Daniel Macek.  I am over the age of 18 and am otherwise competent to make this declaration.  This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

2.      I have been retained as a consultant by Maverickeye UG ("MEU"), a company incorporated in Stuttgart and organized and existing under the laws of Germany, in its technical department.  MEU is in the business of providing forensic investigation services to copyright owners.

3.      The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  It allows users to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

4.      The Internet also affords opportunities for the wide-scale infringement of copyrighted motion pictures and other digital content.

5.      Once a motion picture has been transformed into a digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

6.      To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called peer-to peer ("P2P") or BitTorrent networks.  P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

7.      To use a P2P or BitTorrent distribution system requires more than a click of a button. A software installation and configuration process needs to take place.

8.      The P2P systems enable widespread distribution of digital files: each user of the system who copies a digital file from another user can then distribute the file to other users and so on, so that complete digital copies can be easily and quickly distributed thereby eliminating long download times.

9.      While Plaintiff has observed the infringement occurring on the Internet, it does not know the true identities of those individuals who are committing the infringement.

10.     Additionally, the P2P methodologies for which Maverickeye UG monitored for Plaintiff's motion picture Queen of the Desert (hereinafter "Queen of the Desert" or "the Motion Picture") make even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file using a P2P network.  This is called "seeding."  Other users ("peers") on the network connect to the seeder to download.  As additional peers request the same file, each additional user becomes a part of the network (or "swarm")

Keesmar & Feltus PLLC<br>7150 East Camelback Road, Suite 285<br>Scottsdale, Arizona 85251<br>(480) 421-1001

from where the file can be downloaded.  However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together to comprise the whole.

11.    This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network can also be a source of download for that infringing file, potentially both copying and distributing the infringing Motion Picture. The distributed nature of P2P leads to rapid spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent.

12.    All infringers connected to those files are investigated through downloading a part of the file placed on their computer.

13.    This evidence is then saved on a secure server.

14.    Once the searching software program identifies an infringer in the way described herein for the Motion Picture for which Plaintiff owns the exclusive licensing and distribution rights, it automatically obtains the IP address of a user offering the file for download and saves it in a secure database.

15.    The forensic software routinely collects, identifies and records the Internet Protocol ("IP") addresses in use by those people who employ the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works.  In this way the software is connected to files of illegal versions of the Motion Picture.

16.    An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP").  It only enables Plaintiff to trace the infringer's access to the Internet to a particular ISP. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such

Kerosmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

as a university that is large enough to establish its own network and link directly to the Internet. Each time a subscriber logs on, he or she may be assigned a different (or "dynamic") IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses by the Internet Assigned Numbers Authority ("IANA") or a regional internet registry such as the American Registry for Internet Numbers ("ARIN"). However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. These intermediaries can be identified by the ISP and the intermediaries own logs will contain the subscriber information.

17.     In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber.

18.     Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used.

19.     Maverickeye UG determined that the Doe Defendants identified in Complaint Exhibit A were using the ISPs listed in the exhibit to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

20.     It is possible for digital files to be mislabeled or corrupted; therefore, Maverickeye UG (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and Queen of the Desert.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

21.    As to Plaintiff's copyrighted Motion Picture, Queen of the Desert, a member of Maverickeye UG watches a DVD of the original Motion Picture.

22.    After Maverickeye UG identified the Doe Defendants and downloaded the motion pictures they were distributing, Maverickeye UG opened the downloaded files, watched them and confirmed that they contained Queen of the Desert, the Motion Picture identified in the Complaint.

23.    To identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted Queen of the Desert, Maverickeye UG's forensic software scans peer-to-peer networks for the presence of infringing transactions.

24.    After reviewing the evidence logs, I isolated the transactions and the IP addresses of the users responsible for copying and distributing Queen of the Desert.

25.    Through each of the transactions, the computers using the IP addresses identified in Complaint Exhibit A transmitted a copy or a part of a copy of a digital media file of the copyrighted Queen of the Desert identified by the hash value set forth in Complaint Exhibit A.   The IP addresses, hash values, dates and times contained in Complaint Exhibit A correctly reflect what is contained in the evidence logs.   The subscribers using the IP addresses set forth in Complaint Exhibit A were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted Queen of the Desert.

26.    Moreover, the users were sharing the exact same copy of Queen of the Desert.  Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum."  The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1".  By using a hash tag to identify different copies of Queen of the Desert, MEU was able to confirm that these users reproduced the very same copy of the Motion Picture.

27.    The MEU software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit A and verified that reassembling the pieces using a

specialized BitTorrent client results in a fully playable digital motion picture.

28.     The software uses a geolocation functionality to determine the location of the IP addresses under investigations. The location of each IP address is set forth in Complaint Exhibit A.   IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries.   These registries assign blocks of IP addresses to ISPs by geographic region.  Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format.  An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs.

FURTHER DECLARANT SAYETH NAUGHT.

DECLARATION

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9 day of May, 2016.

By: _____

Daniel Macek

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001